Good morning and may it please the court. My name is Matthew Plunkett appearing on behalf of appellant John Dennis Apel. I will be addressing the issue of absolute ownership today while my co-counsel Mr. Selwyn Chu will address the First Amendment issue in this case. And before beginning I would like with the permission of the court to reserve two minutes for rebuttal. Sure. Your honors there is no violation of section 1382 because the government lacked the exclusive control over the property. The peaceful speech at all times occurred within a designated protest area on a public road outside of a military base within a public easement. These are the exact same facts from United States v. Parker. Parker is virtually indistinguishable. It also involved a defendant peacefully protesting within a public easement on property owned by a military base and in fact on the very same military base. Moreover we agree with the government in their petition for initial hearing on Bonk where the government stated that Parker is the controlling case here. Let's assume it's controlling. They say it's wrong and they want us to do our little thing to have it go in bank. What do you what do you say about that? Well this panel regardless of whether or not Parker was correctly or wrongly decided, it is our contention that is correctly decided. Regardless this this panel is bound by United States v. Parker. That's true what I'm getting at is we could recommend that even though we're bound by it the whole court should reconsider it. What do you think of that? It is our contention that Parker is good law. It was decided on the basis of decades of Ninth Circuit precedent. But isn't it true that Parker stands alone among the circuits in terms of requiring exclusive authority over the property? That is not true. What other circuit has so held? The Eighth Circuit in United States v. Holdridge also recognized the requirement of absolute possession or exclusive right of control. And further the Eastern District of Virginia in the foundational case United States v. Watson also recognized this requirement. And this has long been the the rule of this circuit going back to the 1960s in United States v. Is Holdridge cited in your brief? I believe it is and I can't remember the exact page but I believe it is cited in our brief. Further we agree with the government's characterization of Parker's holding. Quoting from their initial petition for hearing on Bonk, the government stated Parker held the statute unenforceable where Republic roadway easements cross military bases. Reasoning that such easements deprive the government of absolute ownership or exclusive right of possession which Parker held section 1382 required. Applying this very simple holding to this case leads to the exact same conclusion as in Parker. It is undisputed that our client was protesting on a public roadway easement. It is undisputed that Parker held these easements deprive the government of absolute ownership or exclusive right of possession. In fact the latter two implied that an easement would be able to deprive the government of absolute ownership or exclusive right of possession. The easement here though reserves to the government the right to control it, doesn't it? While there is some boilerplate language in the easement itself. Boilerplate or not boilerplate is in there. That is correct. That language is in the easement itself. What do we make of that? Well regardless of that language, the easement itself is still a cession of rights to the public. Isn't the reservation of rights, doesn't that override that? No it does not, your honor. The public still has the right to be present on that roadway easement. But the government has the right to exclude them under that, doesn't it? No they do not, your honor. What does the government's reservation in the easement permit them to do? It allows them to promulgate rules and regulations. And one of the regulations is they can exclude people, right? Well that may be in the easement itself, your honor. However, regardless, if you look to this foundational case here, United States v. Watson, which was an implied easement, which would be even more narrow than the easement in this case, the court in that case still found that the implied public easement was sufficient to deprive the government of absolute ownership. Any reading of Parker, including the government's reading that they adopted in their petition for initial hearing on Bonk, would require reversal here in this case. And unless the court has any more questions on this issue, I will allow my co-counsel, Mr. Selwin-Chu. Counsel, could you give me the citation for the Eighth Circuit case you're referring to? Yes, one second. That citation is 282 F2D 302. And when you come back, if you come back, maybe you can tell me where that's cited to in your brief. Okay. Yes, I will, your honor. Thank you. Thank you, Mr. Plunkett. Turning the floor over to your colleague. Oh, excuse me? You're passing the baton to Mr. Chu? Yes, I will. Good morning. Good morning, your honor. Selwin-Chu for the appellant. As an additional ground for reversal, Mr. Apple's convictions violated the First Amendment. The protest area at Vandenberg Air Force Base is a public forum, and Mr. Apple was well within his First Amendment rights to protest there. This protest area is located at the intersection of California Boulevard and State Highway 1 at the main entrance of Vandenberg Air Force Base. And at this entrance, across California Boulevard, is a painted green line that acts as a de facto boundary for Vandenberg Air Force Base. And if one were to continue past that green line about 200 yards, he or she would eventually reach a security checkpoint that would allow for formal entry into the base. At all relevant times, Mr. Apple not once set foot beyond that green line and crossed into the exclusive jurisdiction of Vandenberg Air Force Base. Rather, he was at all times on the other side of the green line in the protest area that was specifically set aside by Vandenberg for just this kind of protest activity. And also in that area, there was a public road easement covering that entire stretch of Highway 1, as well as concurrent jurisdiction of the state of California and the local county of Santa Barbara. Your Honors, we contend that these facts in concert make that entire area of the easement a traditional public forum, allowing for Mr. Apple to exercise his First Amendment rights in spite of the government's ostensible title to the property. Mr. Chu, how can a military base be a traditional public forum? Well, the area in question is a public thoroughfare, State Highway 1. This is only one stretch of a larger highway that's more popularly known as Pacific Coast Highway. But the military hasn't abandoned that stretch. They retain the right to impose rules and regulations over conduct on that stretch of the highway that's within the military base, haven't they? And if they've done that, how can it be a traditional public forum? It's true that there are regulations that the military has promulgated over this particular area. That said, the easement, the existence of the public road easement, along with the concurrent jurisdiction of the state and local county, we maintain circumscribes the military's authority in a way that would allow for this area to assume a public nature and to qualify. That's ignoring the reservation of rights clause completely, isn't it? Not quite. And there is Supreme Court precedent that stands for the proposition that the government's intent in promulgating these regulations don't necessarily bear on the existence or nonexistence of a traditional public forum. And as a baseline rule, a public street and a public thoroughfare is a classic example of a traditional public forum. And there's no real dispute in the record that the stretch of road is treated as a public street, a public thoroughfare. There's pedestrian and vehicular traffic. There's no gates, sentries, or guards anywhere along the stretch of road. And traffic flows freely in both directions at virtually all hours of the day. Well, that certainly would be true in most every case, except perhaps not if it's a military base. I mean, for purposes of the First Amendment analysis, you can't ignore that reservation of rights provision, can you? No, I don't believe we're ignoring it. We're simply adopting a rather holistic view of the entire area and the facts that largely define the nature of the area. And on that basis, we consent that it is a public forum. But alternatively, at the very least, we strongly believe that Mr. Apple was, by protesting in the designated protest area, he was also in a designated public forum. If that's true, he was barred from coming back. Isn't that like Albertini? Not quite. Albertini is distinguishable in that the defendant in that case was inside the gates of Hickam Air Force Base. And the only reason he was there was because or the reason he was able to gain access to that part of the base was because the base was having an open house on that particular day. To put it differently, he was in an area of the base that the public normally doesn't have access to. And, in fact, the Parker court made this observation, even though it didn't directly address the First Amendment issue. It did observe very pointedly that Albertini involved in an area that was that was only temporarily open to the public, whereas here we have an area that's permanently open to the public by virtue of the public road easement. And in addition, the concurrent jurisdiction that's in place. So on top of that, the we believe also that the language in the policy statement of Vandenberg Air Force Base 1989 policy statement is is very significant in that it manifests a clear intent on the part of the government to open up a nontraditional and otherwise nontraditional form for public discourse. I will just quote that language briefly for this panel. People involved in peaceful protest demonstrations will be permitted to assemble and protest in the concurrent jurisdiction areas adjacent to the intersection of State Highway 1 and Lompoc-Casamalia Road. And despite the existence of certain regulations that place some limitations on that right, there's no requirement for finding of a designated public form that that the form not be subject to any rules and regulations whatsoever. In fact, it's settled law in First Amendment jurisprudence that time, reasonable time, place, manner restrictions are part and parcel of virtually any form. And we don't believe that this is any different, especially if this court were to assess the kinds of regulations that are being promulgated, the need not to not to interfere or obstruct traffic, the requirement that demonstrations not interfere with the security and well-being of those around them. And for all these reasons, we maintain that it also qualifies as a designated public form and that Mr. Apples' barment does not justify his exclusion under the First Amendment. Thank you. Did you want to reserve the rest for rebuttal? Yes, I would. Thank you, Mr. Chu. Good morning. May it please the Court, Mark Viohalem on behalf of the United States. I want to start with where Judge Silverman started, and that's with the government's request that this panel support the government's petition for initial hearing on Bonk. I do believe, and I'll spend a little bit of time on this, that we can prevail even under Parker. But a victory under Parker is almost a Pyrrhic victory for the government because there are 84 bases at least within the Ninth Circuit. Even on this one base, we have two different kinds of easements. The reservation of rights that my learned opponents describe as boilerplate, I actually think is not boilerplate, as is demonstrated by the fact that the Parker easement, which is on the same base issued in the same decade, does not have the same reservation of rights. So even if we were to prevail under the facts of this case, with Parker still on the books, that means two things. One is that military bases that have easements like the easement in Parker will have these holes in their security fence, their legal security fence, which is anywhere there's a public easement, people can come on to do anything. Obviously not to shoot soldiers or something, but if you were to come onto the base to film a secret missile launch, they would have no recourse to throw you off. And I can say, I argued the Parker case, I certainly wish it had come out otherwise, but one of the issues that came up there is that the Highway 246 in Parker is closed with a chain during missile launches. Vandenberg launches satellites and also other missile technology. And the defendant couldn't come up with any answer to what would happen if you set a chain across the road, someone jumps the chain, walks down the road, and starts filming the missile launch. The government would not be able to throw such a person off the base under 1382, because that is still under the logic of Parker, not an area on which the statute can be enforced. There's just no basis in the statutory text, the legislative history, or the precedent for that kind of a result. It is true that there's the Watson decision from the Eastern District of Virginia from 1948, an unreasoned one-page opinion where truly extraordinary facts led to bad law. There's sort of a colloquial saying about that. In Watson, what happened is the military condemned an area in order to build a base. That condemnation resulted in a small town becoming what the Watson court called an exclave of Virginia, where there was literally no way to get from that town to anywhere else in the world without crossing the military base. Under those circumstances, the court implied an easement across the military land, and then said someone who drove down that easement across the formerly public highway couldn't be prosecuted under 1382. So that result may have been sort of the only way to save a town from becoming an exclave, but it's not a reasoned result that should lead this court to follow it. Defendant then points to the Holdridge case from the Eighth Circuit. The Holdridge case, which I know is cited in our petition for initial hearing on Bonk, I think it is cited in their brief as well, didn't actually adopt the Watson test. What it said is that right after Watson was decided, people kept citing the case as a justification for why they couldn't be prosecuted under 1382. And what courts do, is what courts often do, is say even assuming Watson applies, you don't satisfy the Watson test because here the government has absolute ownership or exclusive right of possession. That's all Holdridge does. In fact, that's all Packard does, and that's all every case does until Moat. In Moat, the parties stipulate to the standard being applied because the government knew what would prevail under it. And then in Parker, that stipulation is made into the law of the circuit. So there's no history in the precedent really to support it. There's no basis in the statutory text. For all of these reasons, there's no reason why, starting on a blank slate, you would end up with where Parker wound up. The question is, should the court take the extraordinary step of rehearing or giving initial hearing en banc? And I realize that that is, it's sort of a double extraordinary step. It's extraordinary to ask for rehearing en banc, and it's especially unusual to ask for initial hearing en banc. I will say, you know, it's extraordinary for the government to ask for it. Here the Solicitor General believes it's necessary. The Director of Litigation at Department of Defense believes it's necessary. You know, I think the government would not be here asking for that today if it wasn't something that was very important. And the reason why is that, as I said earlier, 1382 acts as essentially a legal first line of defense for a base. It's a way for base commanders to not have to wait until a person becomes a genuine threat to the base to keep them off. So someone who, like in Parker, had made a death threat to another employee can just be kept off the base. The base doesn't have to worry about monitoring the person any time he's around. It's just a prophylactic measure. Now, I don't... But that's true in the confines of the base. There is no problem. The difficulty here is that the government is dealing with a piece of property that's kind of used in common with the state and local government. Well, I would start by saying that the Greer case, which is a First Amendment case, involved state and county roadways across Fort Dix. And there the Supreme Court said that it was a historically unquestioned power of the base commander to exclude people from the base, even on those public highways. So I think that what you basically... just a few years later, where Justice Rehnquist is in the majority, is he says military bases shouldn't have to choose between affording a convenience to the public and giving up their power to protect the base. Here, basically, this is not like the Flower case. The Flower case is in San Antonio. It's a huge city. I've actually, because my grandfather lived in San Antonio, been on New Brunsfels Avenue. It really is just like Alvarado Street or some street in downtown Los Angeles in the middle of a metropolitan area. That is not what Vandenberg Air Force Base is. So do you urge us to make the determination depending on how busy the thoroughfare is? I think that is clearly a relevant factor from a First Amendment standpoint. Not a relevant factor as from a 1382 standpoint. And I will say, this is one of the ways in which I think Parker has created a sort of an inversion of how you would think that the system would work. You have First Amendment rights that give you the right to speak, to protest, to assemble. And then you have a statute that's designed to keep people off of military bases. One would think that the First Amendment would afford greater protections for protesting on a military base than would a statute designed to keep people off military bases. Greer makes, I think, unambiguously clear that there is no First Amendment right to protest even on a public highway that's subject to a public easement that's used by traffic 24 hours of a day if it's on a military base. So it would be, I think it's an exceedingly odd result that Parker ends up with, which is to say basically, no, Parker or Mr. Apple has no First Amendment right to be on the base, but he has a statutory right to be on the base in a statute that contains no indication that there's some exception for public highways or public roadways. So what I would suggest to the court is that the First Amendment issue is not really an en banc worthy issue. That's something where there's just 30 years of unbroken precedent going the way that defendants like Mr. Apple have no First Amendment right to protest. What I think is en banc worthy is the statutory holding. Obviously, both issues will go up if it goes up, but I don't think the court is going to be hung up on the amount of traffic that's on this roadway, whether there's a parking lot or not, things like that. I think it's a fairly straightforward issue of just interpreting a short statutory text, and that text says, whoever enters upon a military base for a prohibited purpose can be prosecuted under the statute. I was just going to say, can you distinguish Parker? Yes. The key distinction in Parker is the one that you raised, Your Honor, and I think actually all of you have raised, which is that the easement here contains an express reservation that says you can use the roadway subject to any rules and regulations the installation commander may prescribe to protect the interest of the United States. I just can't see how it could possibly be the case that when the military cedes part of its base to make a roadway, but says we will continue enforcing our regulations on it, that that means they cannot enforce their regulations on it under a statute that says nothing about easements or roadways. But is that consistent with exclusive control, though? Well, I want to actually talk about exclusive control. Defending uses the term exclusive control. That's actually nowhere in the precedent. There are a lot of terms that are used. So there's absolute ownership, which I think is not at issue. I think absolute ownership basically means fee simple absolute ownership. With no easement, right? I think so, and no easement, no entail, no remainder, all those things from property class. You don't want to think about it. Exactly. No use of fraud, whatever else. Whereas then they say two different, three different things, actually. They say exclusive right of possession, exclusive possession, or in Vassarage and in the Second Circuit, actual control. Now, actual control is a standard. Let's talk about the Ninth Circuit, Parker. Parker uses interchangeably exclusive possession and exclusive right of possession. Not exclusive control. I actually would rather the test be exclusive control because I think pretty clearly Vandenberg exercises exclusive or certainly actual control over the protest zone. I think it's sort of an open question of what exclusive right of possession means. And I have spent a lot of time trying to answer that question. And the problem is that it's sort of a circular definition. The definition of a property right is property over which you have, or a thing, over which you have the right to exclusive possession. I think in Watson there was just sort of a garbling of that order, so it changed to exclusive right of possession. But it's not really helpful to say property is something over which you have an exclusive right of possession. Well, it's helpful if you think about it in a common sense manner that you have the exclusive right to say who can and who can't be on the property. And an easement sort of belies that concept, wouldn't you agree? I think an easement affects it, to be certain. But I don't think an easement necessarily, I don't think it can be as simple as saying that the mere existence of an easement means you no longer have the right to basically charge someone with trespass. But isn't that the very opposite of exclusive right of possession, though? I don't think so. I don't think exclusive right of possession means absolute, there would be no distinction, or at least a very thin distinction between absolute ownership and exclusive right of possession, if that were correct, Judge Rawlinson. I think the only difference, if that were the way it worked, would be you would have absolute ownership would be fee simple absolute ownership, and then exclusive possession would be basically if you had a leasehold that was for a term of years, but within that term of years you would have complete rights over it, which would be like in Moab, actually. That's how the military base operated in Hawaii. But I don't think that's how, that's certainly not how trespass law works. The way trespass law works is I could give Judge Silverman a right to pick kumquats off my porch, but that wouldn't mean that you, Your Honor, could have a picnic in my backyard. There is a specific area in which a particular person can do a particular thing. Here what I would say is what the easement grants is the right to use a roadway, and under California law, which would normally be how we would interpret it, a grant of a roadway easement is just the right to drive or walk across, and then says members of the public can use it as a roadway, but only under the rules that we prescribe. And so someone who has violated those rules is outside of the carve-out of the absolute ownership. And once you're outside that carve-out, then you're within what I would call the exclusive right of possession, which is someone who has gone outside the limits of what they're allowed to do by the document, the legal property document, can now be excluded. Do you have a case that supports your argument that you can cite us to that would assist us in understanding that argument you're making? In our petition for initial hearing, I believe I cited, and I apologize, I don't know the case off the top of my head, a California case that says that where there's a right-of-way easement, it gives you only the right to travel back and forth on it. What I can't give you, and what I really wish I could, is some case that explains what exclusive right of possession is. The closest thing I was able to find, as I said, there's a line of cases that just say a property right is something where you have an exclusive right of possession. And I think it's undisputed here that Vandenberg does have a property interest in this land. You've got about 30 seconds left. I just wanted to ask you, suppose we agree with them that Parker controls, and we agree with you that Parker's wrong. And taking into account what you said at the beginning, you don't want a Pyrrhic victory that leaves gaps. Would it serve the government's purpose if we were to issue an order that says we are bound by Parker, even though we think it's wrong, and therefore it's reversed, and then that sets it up for whatever in-bank proceedings our colleagues choose to pursue? That would certainly be, I would be happy with that result. What I would most want, although it's a little bit audacious to ask for more, is for the court to actually issue a sua sponte call. Put us on your side all the way. You know, a man can wish. I think the reason why is that this is a case where I think initial hearing is appropriate, just because if the panel thinks that it's bound by a law that's wrong, I think that is where initial hearing is appropriate. Here I noticed that our petition for initial hearing had elapsed effectively, so the only way that it could be back before the whole court for consideration would be if this panel issued a sua sponte call. Thank you. Thank you very much. Rebuttal? Drew, you've got two minutes and change. Would you keep an eye on the clock? All right. Thank you. I will. Thank you. Just very quickly at the outset, I'd like to address the citation issue raised by Judge Rawlinson. The Holdridge v. U.S. case was cited in the government's brief on page 14. I asked if it were in your brief, since you're reciting it. Well, it was cited in the Parker decision, and it was cited in U.S. v. Watson, which was in our reply brief on pages 8 and 10. So indirectly it was in our brief. Getting to the government's primary contentions, Parker, as this panel has acknowledged, is the binding law of the circuit, and it is to be followed. However, it should also be followed because it was correctly decided, and because it built upon a long line of precedent dating back to 1948 in the case of U.S. v. Watson. And all those authorities, although the government has taken great pains to attack their underpinnings, were premised on sound reasoning, many of which were articulated by Judge Rawlinson when she stated that there are some very real jurisdictional gray areas in this area that's before us. When you have a public road easement, and in this case in particular, when you have not only the military's jurisdiction, but also the state and county's jurisdiction, the military simply does not have the same degree of control, actual control, that it otherwise would have in the absence of that jurisdiction from the state and county. And in the absence of public road easement. If the federal government cannot regulate Mr. Apple's activities on the base, who can? The state and local county does have law enforcement authority over that area. For protests? It is true that Vandenberg has taken the primary responsibility of enforcing the protest terms and conditions. However, we do disagree that the government would be neutered in its attempts to maintain base security. There are more than enough federal statutes on the books, as well as state statutes, that would allow the government to pursue its security interests. And if someone other than Mr. Apple were engaged in activity that did threaten the security of the base, then it would have the right to pursue those. Thank you very much, Mr. Chu. The case just argued, and very ably so by both sides, is submitted. We want to especially thank counsel from UC Irvine, Dean Chemerinsky in particular, for a fine job and for taking the case on a pro bono basis. Good morning.
judges: Tunheim, Silverman, Rawlinson